OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

June 11, 2002

Mr. Randall S. James,
Commissioner of Banking

Ms. Leslie L. Pettijohn,
Consumer Credit Commissioner

Mr. James Pledger,
Savings and Loan Commissioner

Texas Finance Commission
2601 North Lamar Boulevard
Austin, Texas 78705-4294

Opinion No. JC-0513

Re: Whether the requirement of section 341.502(a) of the Finance Code applies to loan transactions other than those "regulated by the Office of Consumer Credit Commissioner" (RQ-0483-JC)

Dear Commissioners:

You have requested our opinion as to whether the phrase "regulated by the Office of Consumer Credit Commissioner" applies to all loan transactions listed in section 341.502(a) of the Finance Code. *See* TEX. FIN. CODE ANN. § 341.502(a) (Vernon Supp. 2002). For the reasons explained below, we conclude that section 341.502(a) is applicable only to those transactions for which the consumer credit commissioner is the appointed regulating official.

Section 341.502 was added to the Finance Code in 2001 by Senate Bill 317. *See* Act of May 27, 2001, 77th Leg., R.S., ch. 1235, § 11, sec. 341.502, 2001 Tex. Gen. Laws 2899, 2903. It was enacted as part of Senate Bill 317 and "continues the Office of Consumer Credit Commissioner for 12 years and makes changes to the statutes that were recommended by the Sunset Advisory Commission." SENATE COMM. ON BUSINESS & COMMERCE, BILL ANALYSIS, Tex. S.B. 317, 77th Leg., R.S. (2001) (enrolled version). Section 341.502 provides:

> (a) *A contract for a loan under Chapter 342, a retail installment transaction under Chapter 348, or a home equity loan regulated by the Office of Consumer Credit Commissioner, whether in English or Spanish, must be written in plain language designed to be easily understood by the average consumer.* The contract must be printed in an easily readable font and type size.

> (b) The finance commission shall adopt rules governing the form of contracts to which this section applies. The rules must include model contracts complying with the rules and this section.
>
> (c) A person governed by this section is not required to use a model contract. The person, however, may not use a contract other than a model contract unless the person has submitted the contract to the commissioner. The commissioner shall issue an order disapproving the contract if the commissioner determines that the contract does not comply with this section or rules adopted under this section.
>
> (d) The person may begin using a contract submitted under Subsection (c) on the date it is submitted for review. If the commissioner issues an order disapproving the contract, the person may not use the contract after the order takes effect.
>
> (e) A person may not represent that the commissioner's failure to disapprove a contract constitutes an approval of the contract by the commissioner, the Office of Consumer Credit Commissioner, or the finance commission.

TEX. FIN. CODE ANN. § 341.502 (Vernon Supp. 2002) (emphasis added). The "commissioner," for purposes of subtitle B, title 4 of the Finance Code, of which chapter 341 is a part, is defined as the "consumer credit commissioner." *Id.* § 341.001(4).

Subsection (a) of section 341.502 names three categories of loan: (1) "a contract for a loan under Chapter 342"; (2) "a retail installment transaction under Chapter 348"; and (3) "a home equity loan regulated by the Office of Consumer Credit Commissioner." *Id.* § 341.502(a). All these kinds of loan appear to be subject to a "plain language" requirement. "Plain language," according to the statute, means "designed to be easily understood by the average consumer." *Id.* The question you pose is whether the clause "regulated by the Office of Consumer Credit Commissioner" applies only to the category of "home equity loan," or whether, in the alternative, it modifies all three categories of loan.[1] In short, you ask whether *all* loans made pursuant to chapters 342 and 348 of the Finance Code, regardless of the official assigned to regulate them, are subject to the "plain language" requirement. *See* Request Letter, *supra* note 1. The significance of this inquiry, as will be made clear subsequently, is that if all loans made pursuant to chapters 342 and 348 are subject to the terms of section 341.502, then the consumer credit commissioner will exercise a substantial degree of control over those contracts.

---

[1] *See* Letter from Randall S. James, Banking Commissioner, Leslie L. Pettijohn, Consumer Credit Commissioner, James Pledger, Savings & Loan Commissioner, to Honorable John Cornyn, Texas Attorney General (Dec. 21, 2001) (on file with Opinion Committee) [hereinafter Request Letter].

Chapter 342 applies to a loan which has an interest rate greater than 10 percent per year; "is extended primarily for personal, family, or household use"; and is not usually secured by a lien on real property. TEX. FIN. CODE ANN. § 342.005 (Vernon Supp. 2002). A lender who makes a loan under chapter 342 is required to obtain a license from the consumer credit commissioner. *See id.* §§ 341.101 (Vernon 1998), 342.051 (Vernon Supp. 2002). Chapter 348 relates to "motor vehicle installment sales." *Id.* §§ 348.006-.518 (Vernon 1998 & Supp. 2002). Unless a person is an "authorized lender or a credit union,"[2] he must, in order to sell a motor vehicle at retail, hold a license issued by the consumer credit commissioner. *Id.* §§ 348.501, .502, .504 (Vernon Supp. 2002).

As we have noted, section 341.502 was added as part of the bill to extend the existence of and make changes to the statutes pertaining to the Office of Consumer Credit Commissioner. The bill analysis for the engrossed version of Senate Bill 317 explains:

> The Office of Consumer Credit Commissioner (OCCC) was created in 1967 to regulate the credit industry and educate consumers and creditors to produce a fair, lawful, and healthy credit environment for Texas. OCCC regulates businesses that loan money, sell merchandise on credit, or advance cash, including pawnshops and their employees. The Sunset Advisory Committee has reviewed OCCC and has set forth recommendations regarding OCCC. Senate Bill 317 continues OCCC and sets forth the recommendations of the Sunset Advisory Commission.

HOUSE COMM. ON FINANCIAL INSTITUTIONS, BILL ANALYSIS, Tex. S.B. 317, 77th Leg., R.S. (2002) (engrossed version). Specifically as to section 341.502, the bill analysis states:

> The bill sets forth provisions regulating the form of a loan contract for a consumer loan, a motor vehicle installment transaction, or a home equity loan and requires the [finance] commission to adopt rules governing the form of loan contracts. The bill requires the rules to include model contracts complying with the rules.

*Id.* The bill analysis follows recommendations made by the Sunset Advisory Commission. *See* SUNSET ADVISORY COMM'N, STAFF REPORT: OFFICE OF CONSUMER CREDIT COMMISSIONER at 43 (2000) (Finance Commission to adopt rules governing consumer loan contracts, including model contracts written in plain language).

---

[2]An "authorized lender" is a "person who holds a license issued under chapter 342, a bank, or a savings association." TEX. FIN. CODE ANN. § 341.001(1) (Vernon Supp. 2002).

At first blush, it might appear that the language of section 341.502(a) is applicable to all loan transactions described therein, including those made pursuant to chapters 342 and 348, regardless of the regulating official otherwise responsible for such transactions. The punctuation of the sentence would seem to suggest that result. But the Code Construction Act requires not only that words and phrases be "construed according to the rules of grammar and common usage," it also directs that "[w]ords and phrases shall be read in context." TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1998). And the context of section 341.502 is clearly the regulatory authority of the consumer credit commissioner.

Chapter 341 of the Finance Code provides that the consumer credit commissioner "has the powers and shall perform all duties relating to the issuance of a license under this subtitle and is responsible for the other administration of this subtitle, *except as provided by this subchapter*." TEX. FIN. CODE ANN. § 341.101 (Vernon 1998) (emphasis added). Under subsections (c) and (d) of section 341.502, a person who opts not to use a model contract must submit his contract to the consumer credit commissioner. The commissioner is required to disapprove the contract if he "determines that the contract does not comply with this section or rules adopted under this section." *Id.* § 341.502 (Vernon Supp. 2002). Thus, if subsection (a) of section 341.502 is construed according to its literal sentence structure and punctuation, *any* lender, including banks, savings and loan associations, and credit unions, so long as they choose not to use the model contract adopted by the Finance Commission, *must* submit their contracts under chapters 342 and 348 for approval by the consumer credit commissioner. *See id.*

Such a construction is, however, at variance with chapter 341 as a whole. Subchapter B of chapter 341, entitled "Regulating Official," describes the entities responsible for regulating various lenders. As we previously observed, section 341.101 charges the consumer credit commissioner with regulation "relating to the issuance of a license," but imposes the caveat "except as provided by this subchapter." Section 341.102 relates to the regulation of banks:

> (a) The banking commissioner shall enforce this subtitle relating to the regulation of a state bank operating under this subtitle.

> (b) The official exercising authority over the operations of national banks equivalent to the authority exercised by the banking commissioner over state banks may enforce this subtitle relating to the regulation of a national bank operating under this subtitle.

*Id.* § 341.102 (Vernon 1998). Likewise, section 341.103 pertains to the regulation of savings associations:

> (a) The savings and loan commissioner shall enforce this subtitle relating to the regulation of state savings associations operating under this subtitle.

> (b) The official exercising authority over the operation of federal savings associations equivalent to the authority exercised by the savings and loan commissioner over state savings associations may enforce this subtitle relating to the regulation of a federal savings association operating under this subtitle.

*Id.* § 341.103 (Vernon Supp. 2002). And section 341.104 deals with the regulation of credit unions:

> (a) The credit union commissioner shall enforce this subtitle relating to the regulation of state credit unions operating under this subtitle.

> (b) The official exercising authority over federal credit unions equivalent to the authority exercised by the credit union commissioner may enforce this subtitle relating to the regulation of a federal credit union operating under this subtitle.

*Id.* § 341.104 (Vernon 1998).

It is clear from these provisions that the consumer credit commissioner is empowered to regulate only such loan transactions as are not embraced within the regulatory authority of the banking commissioner, the savings and loan commissioner, the credit union commissioner, and the federal officials responsible for that regulation within their particular spheres. The Code Construction Act directs that when construing a statute a court (and this office) may consider, *inter alia*, the "object sought to be attained"; the "circumstances under which the statute was enacted"; the "legislative history"; and, the "consequences of a particular construction." TEX. GOV'T CODE ANN. § 311.023 (Vernon 1998). In our view, the first three of these factors indicate that section 341.502 was enacted as part of a comprehensive statute amending the regulatory authority of the consumer credit commissioner and was not meant to implicate the regulatory authority of the other regulating officials. The banking commissioner, the savings and loan commissioner, and the credit union commissioner have for many years been granted regulatory authority in their respective spheres. Had the legislature intended to transfer oversight in the area of loan contracts from these commissioners to the consumer credit commissioner, we believe it would have done so explicitly. Certainly such a definitive change would have been reflected in the bill analyses, the recommendations of the Sunset Commission, or in legislative hearings, but we find nothing in those sources to that effect.

Furthermore, to construe the statute to permit the consumer credit commissioner to approve the loan contracts of banks, savings associations, and credit unions would have the consequence of interfering with federal regulatory authority. "No national bank shall be subject to any visitorial powers, except as authorized by Federal law, vested in the courts of justice . . . ." 12 U.S.C. § 484(a) (2000). "Visitorial power" has been defined as the "power to control and arrest abuses, and to enforce a due observance of the statutes." *State v. First Nat'l Bank, Or.*, 123 P.712 (Or. 1912).

Finally, the *context* of section 341.502 is that of chapter 341 of the Finance Code in general, which describes the various officials responsible for the regulation of particular kinds of institutions.

The result is that the clause "regulated by the Office of Consumer Credit Commissioner" should be applied to each of the three kinds of transactions described by section 341.502. In sum, section 341.502 is applicable only to transactions that are otherwise within the regulatory authority of the consumer credit commissioner. It has no application to transactions that are committed by statute to the regulatory authority of the banking commissioner, the savings and loan commissioner, the credit union commissioner, or the federal officials responsible for such regulation in their respective spheres.

## S U M M A R Y

Section 341.502(a) of the Finance Code is applicable only to those loan transactions for which the consumer credit commissioner is the appointed regulating official. It has no application to loan transactions subject to the regulatory authority of the banking commissioner, the savings and loan commissioner, the credit union commissioner, and the federal officials responsible for regulation within their respective spheres.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General, Opinion Committee